# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:09cv109

| | | |
|---|---|---|
| **ERNEST H. McDANIEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(b), pursuant a specific Order of referral of the district court, and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.[1]

---

[1]     The undersigned notes for the record that while in private practice, he represented plaintiff in minor matters completely unrelated to this administrative review with the last representation being in the period of 1998 to 1999.. The undersigned has not engaged in the private practice of law since October 5, 2004. The undersigned does not find that such distant and unrelated representation is a reason for recusal under 28 U.S.C. § 455(a) or (b) or under the Guide to Judiciary Policy, Vol 2 Ethics and Judicial Conduct, Ch. 2: Code of Conduct for United States Judges, Canon 3(c).

## FINDINGS AND CONCLUSIONS

### I.     Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits, as well as an application for Supplemental Security Income.  His claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ").  After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council.  Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner").  Thereafter, plaintiff timely filed this action.

After the ALJ denied this application on August 6, 2008, plaintiff filed a new application for benefits alleging an onset date of August 9, 2008.  That application was allowed by another ALJ and, while not before this court for review, has been submitted by plaintiff as new evidence.  Significantly, plaintiff's fiftieth birthday fell on August 7, 2008, making plaintiff a "younger individual" in this application and  a person "closely approaching advanced age" in the second application.  The impact of

such birthday will be discussed later when the court considers plaintiff's submission of new evidence.

## II.  Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth.  Such findings are referenced in the substantive discussion which follows as needed.

## III.  Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra.  Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence.  Hays v. Sullivan, supra.

## IV.  Substantial Evidence

### A.  Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record.  The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence.  The undersigned finds that it is.

### B.  Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled.  The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding

of "disabled" will be made without consideration of vocational factors;

d.      If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.      If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R.  404.1520(b)-(f).  In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

## C.      The Administrative Decision

At the First Step of the sequential evaluation process, the ALJ found that plaintiff had engaged in substantial gainful activity during a portion of the time he alleged being disabled, to wit, in 2006 when he earned $18,125.90 and in 2007 when his earnings were $17,373.89.  Tr., at 14-15.[2]  As such, a finding of disability under the Act was precluded during the time plaintiff was working.[3]

At the Second Step, the ALJ found that plaintiff had severe impairments consisting of hypertension, diabetes mellitus, chronic back and hip pain, obesity, asthma, and peripheral vascular disease. Tr., at 15. The ALJ found that plaintiff's

[2]      The ALJ appears to have incorrectly captioned his finding. See Tr., at 14, f.f. #2.

[3]      At the later stages of the disability determination process, the ALJ determined whether plaintiff was disabled when he was not working.

5

depression was not a severe impairment because it had not caused any work-related functional limitations for any period of twelve month or more. Tr. 15.

At the Third Step, the ALJ determined that plaintiff's impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4. Tr., at 16.

At the Fourth Step, the ALJ considered medical reports and opinions as well as plaintiff's subjective complaints, finding that plaintiff had the Residual Functional Capacity (hereinafter "RFC") for a full range of work at the light exertional level. Tr., at 16-21. The ALJ determined that plaintiff's functional limitations prevented him from performing his past relevant work as a tooling technician. Tr. 21.

At the Fifth Step, that ALJ determined that when he considered plaintiff's RFC together with his age (a younger individual at the time of decision), education, and past work experience, there were jobs that existed in significant numbers in the national economy that plaintiff could perform based on the Medical-Vocational Guidelines (hereinafter "the Grids"). Tr., at 21-22. Thus, the ALJ determined at the Fifth Step of the sequential evaluation process that plaintiff was not disabled from September 10, 2003, through the date of his decision August 6, 2008, which was the day before plaintiff's fiftieth birthday. Tr., at 22.

**D. Discussion**

**1. Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error:

I.     ALJ Wilson failed to apply the law of the Circuit, to the prejudice of the Plaintiff, in evaluating the effect on the Plaintiff of disabling pain;

II.    The ALJ's analysis of the Plaintiff's pain failed to follow this Circuit's repeated admonitions to the Commissioner of Social Security as to how to evaluate disabling pain;

III.   ALJ Wilson failed to evaluate the clinical evidence of record regarding the non-exertional impairments of the Claimant, that is the major depressive disorder, moderate, diagnosed by Nan Fawcett, the counselor who saw him at the request of New Vistas Behavioral Health Services on February 9, 2005;

IV.    ALJ Wilson erred in applying the medical/vocational guidelines to the nonexertional impairments of the Claimant, that is his pain and his major depressive disorder, without calling a vocational expert to testify; and

V.     ALJ Wilson failed to evaluate the obesity of the Claimant as required by the applicable Social Security Regulation.

Plaintiff's Brief (#8-1). Plaintiff's assignments of error will be discussed *seriatim*.

**2. First and Second Assignments of Error**

In the First Assignment of Error, plaintiff contends that ALJ Wilson failed to apply the law of the Circuit, to the prejudice of the Plaintiff, in evaluating the effect on the Plaintiff of disabling pain. In the Second Assignment of Error, plaintiff

contends that the ALJ's analysis of the Plaintiff's pain failed to follow this Circuit's repeated admonitions to the Commissioner of Social Security as to how to evaluate disabling pain. Both assignments of error address how the ALJ handled plaintiff's subjective complaints, including pain, and will be considered together.

The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating subjective complaint was developed by the appellate court in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), and is now reflected in Social Security Ruling 96-7p.[4]

Craig requires that the Commissioner apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. See 20 C.F.R. § 416.929. In conducting the two-step Craig analysis, Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical

---

[4] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" Craig, at 594. Once a medical impairment is identified by the ALJ in Step One that could reasonably be expected to produce the pain or other subjective complaint asserted, the intensity and persistence of that pain is evaluated by the ALJ along with the extent to which such pain or other subjective complaint limits claimant's ability to engage in work. Id.; see also 20 C.F.R. § 416.929(c).

Once the ALJ progresses to Step Two, he or she considers the following factors, which include: (1) plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4) objective medical evidence of pain if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain. Craig, supra, at 595.

Review of the decision of the ALJ reveals that he correctly recited and applied the pain standard applicable in the Fourth Circuit. See Tr., at 17-21. Plaintiff's subjective complaints included breathing problems, pain, and leg numbness; despite plaintiff's argument, review of the ALJ's decision reveals that the ALJ carefully considered and evaluated those complaints. Id. The ALJ next found that plaintiff's subjective complaints were not fully credible to the extent that he indicated that his

symptoms resulted in functional limitations that were disabling, but only credible to the extent that they restricted plaintiff to light work. Tr., at 20-21. Specifically, the ALJ concluded:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptom's are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . .

Tr., at 20. The ALJ then satisfies his burden of explaining why he did not fully credit plaintiff's reports, in pertinent part, as follows:

> He has not required frequent treatment for pain or shortness of breath and is not taking any prescribed pain medication, as would be expected of someone suffering from symptoms of a totally incapacitating degree. He has alleged that he is unable to see doctors as often as he would like but has failed to show that he has exhausted all charitable means of obtaining treatment.
>
> Moreover, he has continued to engage in a wide range of activities, which are contraindicative of symptoms of a totally incapacitating degree. About the time he completed his education in late 2003, he reported to his treating orthopedist that he was looking for work. He has been working on a fairly continuous basis since 2006. He has also drawn unemployment benefits and has offered no explanation for the discrepancy in holding himself out as able to work and seeking disability benefits at the same time. I also note that there is no medical basis for his alleged symptoms of intermittent numbness of his lower extremities from the waist down and that this detracts from his credibility.

Id. (internal citation to the record omitted). Such determination fully complies with the currently applicable standard for evaluating pain and other subjective complaints

in the Fourth Circuit. Further, such determination is fully supported by substantial evidence of record. The undersigned finds no merit to the first or second assignments of error.

### 3. Third Assignment of Error

Plaintiff next contends that the "ALJ failed to evaluate the clinical evidence of record regarding the non-exertional impairments of the claimant, that is the major depressive disorder, moderate, diagnosed by Nan Fawcett, the counselor who saw him at the request of New Vistas Behavioral Health Services on February 9, 2005." This contention is wholly without merit as the ALJ did, in fact, "evaluate the clinical evidence of record regarding the non-exertional impairments of the claimant . . . ." The ALJ found that plaintiff's depression was not a severe impairment because it had not caused any work-related functional limitations for any period of twelve month or more. See Tr., at 15. Indeed, the ALJ discussed plaintiff's 2005 mental health issues at length:

> The claimant was seen at a mental health center in February 2005, after having lost his job and then having lost his wife after she battled with cancer for two years. He was diagnosed as having major depression but refused medication. He was seen on only one occasion after his initial assessment and then discontinued treatment. Since that time, he has engaged in a wide range of activity, including attending school and working on a full-time basis for extended periods of time. I, therefore, conclude that he has not had a problem with depression which has caused any work related functional limitations for a period of twelve

months or more.  Accordingly, I find that this impairment is not "severe," within the meaning of the Social Security Act.

Tr., at 15 (emphasis added; internal citation to the record omitted).

As to the 2005 Global Assessment of Functioning (hereinafter "GAF") score of 45 assessed by the counselor who diagnosed major depression, such score - - just like the diagnosis of major depressive disorder -- does not alter the ALJ's determination that plaintiffs complaints of depression and treatment for it were transitory.  The ALJ looked to plaintiff's activities, which included working on a full-time basis for extended periods of time, id., and found that plaintiff's depression was not a severe impairment because it had not caused any work-related functional limitations for any period of twelve month or more.  Id.

Assignment of a GAF of 45 does not in and of itself provide the clinical findings needed to support the marked levels of limitation suggested by plaintiff.  Put another way, a GAF score of 45 does not, alone, trump substantial evidence indicating to the ALJ that plaintiff's mental health issues did not amount to a severe impairment. There is simply no requirement that a person with a GAF of 45 is unable to meet the basic mental demands of competitive remunerative unskilled work. Seymore v. Apfel, 131 F.3d 152 (10th Cir.1997)(a GAF of 45, standing alone, "does not evidence an impairment seriously interfering with claimant's ability to work").  Indeed, the evidence relied on by the ALJ in fact showed that plaintiff was engaging in work on

a full-time basis for extended periods of time. Further, the very evidence on which plaintiff relies also provides evidence that the counselor who diagnosed major-depressive disorder also noted that since plaintiff's wife had died only several weeks earlier, and as a result his depression might be part of a normal response to loss. Tr., at 269. Such would be clear evidence of a condition that was transitory. The undersigned, therefore, finds no merit to this assignment of error.

While not specifically argued, the court has also considered that plaintiff has argued that the decision should be reversed because the ALJ failed to mention the GAF score. Generally, failure by the Commissioner to consider an *entire line* of evidence falls well below the minimal level of articulation required by the Social Security Act. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir.1995). However, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). In this case, the same evidence that supported the ALJ's conclusions as to the counselor's diagnosis of major depressive disorder would also support discounting the counselor's supporting conclusion as to GAF. The issue of whether it is reversible error for an ALJ to fail to mention corroborative evidence has

been squarely addressed by a number of circuits, as discussed by the district court in

Orcutt v. Barnhart, WL 2387702, *8 -9 (C.D.Cal. 2005)[5]:

> As long as substantial evidence supports the ALJ's conclusion and the ALJ explains why "significant probative evidence has been rejected," an ALJ's failure to discuss lay witness testimony constitutes harmless error. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984). In *Vincent*, although the ALJ did not discuss the plaintiff's son's testimony in his hearing decision, the court held that such an omission did not require reversal because the medical evidence supported the ALJ's decision that the plaintiff was not disabled. *Id.*
>
> The view that an ALJ need not discuss every piece of evidence, even when that evidence is from a lay witness, has found support in the Seventh and Eighth Circuits, especially when lay witness testimony does little more than corroborate a plaintiff's own testimony. In *Books v. Chater*, a Seventh Circuit decision, the court held that "[a]ll we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that [he] considered the important evidence ··· [and to enable] us to trace the path of the ALJ's reasoning.' " *Books v. Chater*, 91 F.3d 972, 980 (7th Cir.1996) (*quoting Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir.1993) (*quoting Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985)). Since plaintiff's brother's testimony in *Books* "did not constitute a separate 'line of evidence,' " but "served strictly to reiterate, and thereby corroborate, [plaintiff's] own testimony concerning his activities and limitations"-and the plaintiff's testimony was found by the ALJ to be "untenable" when contrasted with his daily activities and the medical evidence-the court held that the ALJ's failure to specifically discuss the plaintiff's brother's testimony was not error. *Books*, 91 F.3d at 980. Similarly, in *Young v. Apfel*, the Eighth Circuit held that "[a]lthough specific articulation of credibility findings is preferable, we consider the lack thereof to constitute a deficiency in opinion-writing that does not require reversal" as long as the ALJ's "ultimate finding is supported by substantial evidence in the record." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.2000). In *Young*, since the same evidence the ALJ used to discount the plaintiff's testimony "also support[ed]

5      Ibid.

discounting the testimony of [the plaintiff's] husband," the court held that "the ALJ's failure to give specific reasons for disregarding [the husband's] testimony [was] inconsequential." *Id.*

Any error by the ALJ in this case by not discussing Hardin's testimony was harmless for a number of reasons.

Id., at 8 -9. As in Orcutt, the issue is not whether the ALJ failed to mention a particular piece of evidence in his decision, but whether the ALJ's final decision denying benefits is supported by substantial evidence contained in the Administrative Record. The undersigned finds that it is as the ALJ found that plaintiff's depression was not a severe impairment because it had not caused any work-related functional limitations for any period of twelve month or more, Tr., at 15, and that "he has engaged in a wide range of activity, including attending school and working on a full-time basis for extended periods of time." Id.

**4.      Fourth Assignment of Error**

In his fourth assignment of error, plaintiff contends that the ALJ erred in applying the medical/vocational guidelines to the nonexertional impairments. Plaintiff argues that the ALJ should have called a vocational expert due to plaintiff's complaints of pain and his major depressive disorder.

In Heckler v. Campbell, 461 U.S. 458, 470 (1983), the United States Supreme Court upheld the Commissioner's promulgation of the Medical-Vocational Guidelines (hereinafter the "Grids" or "Grid") for use at the fifth step of the sequential evaluation

process and determined that, in appropriate cases, the Commissioner need not introduce evidence of specific available jobs. The Court of Appeals for the Fourth Circuit has subsequently held that the Grids may be used to direct a finding of either "disabled" or "not disabled" in cases involving exertional limitations. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). The Fourth Circuit has also held that the mere presence of nonexertional limitations does not, *per se*, preclude application of the Grids as nonexertional limitations rise to the level of nonexertional impairments and preclude the use of the guidelines only when the limitations are significant enough to prevent a wide range of gainful employment at the designated level. Id. Pain can be either exertional, nonexertional, or a combination thereof. Id.; see also Gory v. Schweiker, 712 F.2d 929, 931 (4th Cir. 1983) (the disability claimant's complaints of pain and leg swelling were only exertional limitations). The presence of pain does not necessarily preclude utilization of the Grids to direct a finding of not disabled.

In this case, the ALJ determined that the Grid that reflected plaintiff's age, education, and vocational experience , along with the functional capacity to perform unskilled light work, directed a finding that plaintiff was"not disabled" inasmuch as there existed a significant number of jobs in the national economy that such a person could perform. See 20 C.F.R. Part 404, Subpart P, Appendix2, Table 2, Rules 202.13 and 202.21. Plaintiff contends that such finding was in error as plaintiff's non-

exertional impairments prevented the ALJ from using the Grids and that the ALJ should have employed a VE in making a determination of whether plaintiff could perform work in the national economy.

The purpose of bringing in a VE  is to assist the ALJ in determining whether there is work available in the national economy which this particular plaintiff can perform.  In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, <u>Chester v. Mathews</u>, 403 F. Supp. 110 (D.Md. 1975), and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.  <u>Stephens v. Secretary of Health, Education and Welfare</u>, 603 F.2d 36 (8th Cir. 1979).

Plaintiff argues that the ALJ should have called a vocational expert due to plaintiff's complaints of pain and his major depressive disorder.  As discussed above, the ALJ properly determined that plaintiff's subjective complaints were not fully credible to the extent that he indicated that his symptoms resulted in functional limitations that were disabling, but only credible to the extent that they restricted plaintiff to light work.  Tr., at 20-21.   Such limitation is fully taken into account in the ALJ's RFC determination, and such determination did not prevent application of the Grids.  Further, as to plaintiff's major depressive disorder, the ALJ found as follows:

> he has not had a problem with depression which has caused any work related functional limitations for a period of twelve months or more. Accordingly, I find that this impairment is not "severe," within the meaning of the Social Security Act.

Tr., at 15. The mere presence of nonexertional limitations does not, *per se*, preclude application of the Grids, precluding the use of the guidelines only when the limitations are significant enough to prevent a wide range of gainful employment at the designated level. Substantial evidence supports the ALJ's finding that plaintiff retained the functional capacity to perform a full range of light work. The undersigned can find no merit to this assignment of error.

### 5.    Fifth Assignment of Error

In the fifth assignment of error, plaintiff argues that the ALJ failed to evaluate the obesity of the claimant as required by the applicable Social Security Regulation. In support of such argument, plaintiff cites an opinion authored by the undersigned in Glenn v. Commissioner of Social Security, 1:05-cv-00230 (W.D.N.C. May 19, 2006). In Glenn, the undersigned remanded that case for consideration of plaintiff's obesity under SSR 02-1p.

SSR 02-1p requires the Commissioner to make an individualized assessment as to how plaintiff's obesity, considered together with his other impairments, impacted his functional capacity for work. In this case, the ALJ satisified the Commissioner's

obligation and found plaintiff's obesity to be a severe impairment Tr., at 15.  In this case, the ALJ made the following observations and findings:

> The claimant testified that his back problems began after he gained about 100 pounds prior to the alleged onset date.  He now weighs three hundred twenty pounds, is five feet ten inches tall, and testified that he is unable to touch his feet.

Tr., at 19.  The court notes that the functional limitation testified to, an inability to touch one's feet, does not appear to be a functional capacity necessary to perform the full range of light work, which is defined in the regulations as follows:

> **(b) Light work**. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 CFR § 404.1567.

Plaintiff also takes issue with the impact his obesity had on his asthma and hypertension, suggesting that the ALJ failed to consider the impact of his obesity on these medical conditions and the limitations resulting from them.  Plaintiff does not cite the court to any specific complications or resultant limitations that the ALJ failed to consider.   Contrary to plaintiff's argument, review of the ALJ's decision reveals that he did consider the impact of plaintiff's obesity:

The medical evidence establishes that he has a diagnosis of asthma.... Since the reconsideration determination, he has returned to work on a fairly regular basis and <u>has not been shown to have any functional limitations related to asthma or breathing problems related to his body habitus</u> . . . .

* * *

The claimant was also under treatment for hypertension.... He has not been shown to have any functional limitations related to hypertension which would significantly affect his ability to perform jobs within the residual functional capacity I have assessed. Nor has he been shown to any additional limitations related to obesity ....

Tr., at 20. Clearly, the ALJ gave plaintiff's obesity the full measure of consideration required by SSR 02-1p, and precisely considered the impact of his obesity on plaintiff's asthma and hypertension. The undersigned finds no merit in this assignment of error.

### 6.     Plaintiff's Submission of New Evidence

In docket entries numbered 11 and 12, plaintiff has filed Motions to Receive New and Material Evidence (<u>see</u> #11 & #12).[6] Plaintiff's new evidence consists of a favorable disability decision of another ALJ concerning an onset of disability apparently occurring just days after the unfavorable decision issued in this case.

---

[6]     It is apparent that plaintiff filed such pleading twice in error.

Plaintiff contends that remand is appropriate based on evidence which he contends is both new and material. The sixth sentence of 42, United States Code, Section 405(g) provides:

> The court may, . . . at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

Id. In Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93 (4th Cir. 1991),[7] the Court of Appeals for the Fourth Circuit held that evidence is new if it "is not duplicative or cumulative," and is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id., at 96. See also Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). While it appears that such evidence is new, it does not appear that there is a reasonable possibility that had such evidence been available to the ALJ there would have been a different outcome.

---

[7] While the appellate court in Wilkins was addressing whether the Appeals Council properly addressed evidence which the claimant represented as new and material, the undersigned finds the Wilkins definitions instructive and appropriate in the circumstances presented by this case.

In the proffered subsequent decision, another ALJ found that plaintiff had been disabled since his claimed onset date of August 9, 2008, three days after the decision herein. On the date of the ALJ's decision herein, August 6, 2008, plaintiff was 49 and a "younger individual." As of the alleged onset date of August 9, 2008, plaintiff was 50 and a person "closely approaching advanced age".

While the undersigned accepts that this opinion is new, the undersigned cannot find that it is material in that it deals not only with evidence submitted in this case, but new evidence developed after the decision in the case issued and, most importantly, a change in plaintiff's status from a "younger individual" to a person "closely approaching advanced age." There is not, however, a reasonable possibility that such new evidence would have changed the outcome in this case, Borders v. Heckler, 777 F.2d 954, 956 (4th Cir.1985), as the change in age and the resulting status under the Act would be inapplicable. As may be discerned from the ALJ's decision in this case, age and the resulting status was considered in determining the plaintiff's RFC, which then was used to make a determination under the Grids. In Bradley v. Barnhart, 463 F.Supp.2d 577 (S.D.W.Va. 2006), the district court adopted that the analysis used in Bruton v. Massanari, 268 F.3d 824 (9th Cir.2001), which explained that new evidence is material if it "bear[s] directly and substantially on the matter in dispute," and if there is a "reasonabl[e] possibility that the new evidence would have changed

the outcome of the determination." <u>Bruton</u>, at 827. As in this case, the analysis focused on similarities between key medical evidence, the time period under consideration, and the claimant's age classification in the decision appealed and the decision offered as new evidence. <u>Id.</u>

Applying <u>Bruton</u> to this case, it is apparent that the new decision is not material. The key medical evidence relied on in the new opinion consisted of a newly developed physical residual functional capacity assessment and an evaluation by Dr. Carraway all in 2009. There is no argument that such supportive reports relate back to the period considered by the ALJ in this case. Further, it is readily apparent that plaintiff's fiftieth birthday played a pivotal role in the favorable decision as it changed his status from "younger individual" to "closely approaching advanced age." Finally, it is readily apparent that the two decisions considered separate periods of disability, with a claimed onset in this case of September 3, 2003, and an onset of disability in the new opinion of August 9, 2008. The undersigned will, therefore, recommend that the district court overrule the introduction of such evidence in this matter as while it appears that such evidence is new, it does not appear that there is a reasonable possibility that had such evidence been available to the ALJ there would have been a different outcome.

**E.      Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, the undersigned must recommend to the district court that plaintiff's Motion for Summary Judgment be denied, the Commissioner's Motion for Summary Judgment be granted, and that the decision of the Commissioner be affirmed.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)    the decision of the Commissioner, denying the relief sought by plaintiff, be **AFFIRMED**;

(2)    the plaintiff's Motion for Summary Judgment (#8) be **DENIED**;

(3)    the Commissioner's Motion for Summary Judgment (#9) be **GRANTED**;

(4)    plaintiff's Motions to Receive New and Material Evidence (see #11 & #12) be **OVERRULED** an **DENIED**; and

(4)    this action be **DISMISSED**.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: July 22, 2010

Dennis L. Howell
United States Magistrate Judge